O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY DIAZ,<br><br>           Plaintiff,<br><br>    v.<br><br>MARC AVENT,<br><br>           Defendant. | Case No. 5:16-cv-01861-CAS (SKx)<br><br>**ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

**I.    INTRODUCTION**

On June 13, 2024, United States Magistrate Judge Steve Kim (the "Magistrate Judge") issued a Report and Recommendation granting defendant Dr. Marc Avent's ("Avent" or "defendant") renewed motion for summary judgment. Dkt. 207 ("R&R"). On June 27, 2024, plaintiff Tommy Diaz ("Diaz" or "plaintiff") filed his objections to the R&R. Dkt. 208 ("Objections"). On July 11, 2024, defendant filed a reply to plaintiff's objections. Dkt. 212 ("Reply").

///

1  Pursuant to 28 U.S.C. § 636, the Court has reviewed the records and files
2  herein, the R&R of the Magistrate Judge, plaintiff's Objections thereto, and
3  defendant's Reply. After having made a *de novo* determination of the portions of
4  the R&R to which plaintiff's objections were directed, the Court accepts the report,
5  findings, and recommendations of the Magistrate Judge.

## II. BACKGROUND

On August 19, 2016, Diaz filed an action pursuant to 42 U.S.C. § 1983. Dkt. 1. Therein he alleged deliberate indifference to his medical needs, as well as resultant emotional distress. Id. Diaz named Kimberley Seibel, Warden of Chuckawala State Prison, the Deputy Director of California Correctional Health Services, and several physicians employed by Chuckawala State Prison Medical Services in his complaint, including Avent. Id. All defendants other than Avent have been terminated.

On August 11, 2021, Avent filed a motion for summary judgment. Dkt. 135. On March 27, 2023, the Magistrate Judge issued a Report and Recommendation on the initial motion for summary judgment, recommending that summary judgment for defendant be denied. Dkt. 164. On April 3, 2023, counsel was appointed for Diaz. Dkt. 165. On April 10, 2023, Avent objected to the Report and Recommendation. Dkt. 168. On April 24, 2023, Diaz, now with the assistance of counsel, replied. Dkt. 170. On May 2, 2023, this Court adopted the Magistrate Judge's Report and Recommendation denying Avent's motion for summary judgment. Dkt. 171.

On January 5, 2024, Avent filed an *ex parte* application seeking to file a second motion for summary judgment, on the grounds that new evidence had come to light indicating there was no genuine dispute of material fact that Diaz did not suffer any damages or injury as a result of any action or inaction of Avent. Dkt. 184. Diaz did not oppose the *ex parte* application, nor did he oppose the filing of a

second motion for summary judgment. Id. Accordingly, on January 17, 2024, the Court granted the *ex parte* application, granting Avent leave to file a second motion for summary judgment regarding whether or not Diaz suffered any injury or harm due to any alleged delay in medical treatment by Avent. Dkt. 188.

On February 16, 2024, Avent filed his second motion for summary judgment. Dkt. 189 ("Motion"). On March 4, 2024, Diaz filed his opposition. Dkt. 193 ("Opp."). On March 11, 2024, Avent filed his reply. Dkt. 194 ("MSJ Reply"). As detailed above, the Magistrate Judge subsequently issued his R&R recommending that the second motion for summary judgment be granted, to which objections and a reply were filed. R&R; Objections; Reply.

The facts at issue are comprehensively set forth in the R&R, thus the Court does not repeat them unless relevant to the Court's decision. R&R at 2-6.

### III. LEGAL STANDARD

"A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3) (stating "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to," and "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions"). Proper objections require "specific written objections to the proposed findings and recommendations" of the magistrate judge. Fed. R. Civ. P. 72(b)(2). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) ("The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise."). Where no objection has been

3

made, arguments challenging a finding are deemed waived. See 28 U.S.C. § 636(b)(1)(C) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."). Moreover, "[o]bjections to a R&R are not a vehicle to relitigate the same arguments carefully considered and rejected by the Magistrate Judge." Chith v. Haynes, 2021 WL 4744596, at *1 (W.D. Wash. Oct. 12, 2021).

## IV.   DISCUSSION

The R&R before the Court recommends granting Avent's motion for summary judgment. R&R at 18. The Magistrate Judge concludes that following expert discovery, the record demonstrates that,

> (1) plaintiff has not adduced enough clinical evidence or medical opinion establishing that he experienced any detectable liver damage while awaiting [hepatitis-C virus ("HCV")] treatment; and that (2) plaintiff has not obtained admissible medical evidence or expert testimony establishing that his varied pain symptoms—while cognizable injuries even with no proof of liver damage—were caused by defendant's treatment delay rather than by plaintiff's other coexisting health problems.

Id. at 2. Accordingly, even viewing the evidence in the light most favorable to Diaz, the Magistrate Judge concludes that no reasonable jury could find Diaz was able to prove the injury and causation elements he has the burden of establishing to succeed on his Eighth Amendment claim. Id.

In order to prevail on his claim, the R&R explains, Diaz must prove that he "(1) that he had an objectively serious medical need, (2) that defendant was deliberately indifferent to that need, (3) that plaintiff suffered more than de minimis physical injury, and (4) that defendant's purposeful act (or failure to act) was the actual and proximate cause of that injury." Id. at 7. Avent, at this stage,

4

maintains that there is no genuine dispute of material fact as to the third and fourth elements of the claim: injury and causation. Id.

The R&R concludes that Diaz offers no evidence sufficient to create a genuine dispute about whether Avent's delay in providing HCV treatment caused liver damage. Id. at 9. While the R&R acknowledges that the record does not contain "irrefutable proof" that Diaz suffered no liver damage, it finds that "because it is his burden to show cognizable injury, the lack of any medical evidence detecting liver damage means that he cannot carry his burden to prove injury (again, absent symptoms) based solely on the known risk of progressive liver disease from chronic HCV." Id. at 11. The R&R finds that the anticipated testimony of Dr. Meyer Solny ("Dr. Solny"), Diaz's medical expert, would simply restate the known risks of chronic HCV, supporting what is already established here: that Diaz's HCV presented a serious medical need that would satisfy the objective element of Diaz's Eighth Amendment claim. Id. at 11. This conclusion, the R&R found, does not support Diaz's argument as to either of the elements at issue, injury and causation. Id. at 12. According to the Magistrate Judge, "just because an infection … has been diagnosed by a physician as mandating treatment because it poses a substantial risk of organ damage cannot (without more) also be enough to meet the Eighth Amendment's distinct actual injury requirement." Id. Thus, Dr. Solny, the R&R concludes, has no factual basis to testify that Diaz's liver was objectively harmed as a result of Avent's delayed treatment. Id.

The R&R also concludes that Diaz does not have sufficient evidence to create a genuine dispute as to whether Avent's delay in providing Diaz with HCV treatment caused Diaz's pain symptoms. Id. at 13. Pursuant to § 1983, the R&R explains, a prisoner stating a claim for unconstitutionally deficient medical care must show that the defendant's actions were the actual and proximate cause of his injuries, neither of which Diaz can prove based on the record here. Id. at 13-14.

No medical expert, the R&R notes, "ever reached anything resembling a reliable diagnosis of plaintiff's multiple and varied complaints of pain, swelling, numbness, weakness, fatigue, and the like." Id. at 15. The Magistrate Judge points out that Diaz's expert did not opine on whether the delay in HCV treatment, rather than just Diaz's HCV diagnosis, could have caused Diaz's symptoms. Id. at 16. The R&R finds that "even with Dr. Solny's testimony, plaintiff has not met his burden to provide more than the speculation of specific causation." Id. Because Diaz has no admissible expert testimony about the causes of his pain symptoms, he also cannot establish proximate cause, which would require him to show that his pain symptoms "were not only more likely caused by HCV than by his coexisting conditions, but also that they were more likely caused by defendant's decision not to provide HCV treatment, such that liability for those pains should rest with defendant." Id. at 17.

  Diaz raises four objections to the R&R. See generally Objections. First, Diaz argues that Avent's failure to provide a liver biopsy prevented Diaz from presenting the best evidence of the liver damage he alleges he suffered as a result of the treatment delay. Id. at 6-7. Diaz points to Dr. Solny's statement when asked if there was evidence of further damage to Diaz's liver, that "'there hasn't been a second liver biopsy. So we don't have the option or the opportunity of comparing it to the initial liver biopsy.'" Id. at 7. Diaz accordingly argues that Avent created his "substantial disadvantage" in proving that the damage to his liver resulted from the delay in treatment. Id. at 7-8.

  Second, Diaz argues that he raised a genuine issue of material fact regarding the cause of his pain. Id. at 8. He argues that the Magistrate Judge was incorrect in his reasoning that Diaz could not establish that delayed treatment caused his pain because there is evidence that some of his pain or neuropathy symptoms could have been caused by other coexisting conditions. Id. Diaz argues that "this

6

reasoning disregards undisputed evidence in the record that [HCV] can cause pain, and that [] Diaz expressed that the delay of his [HCV] treatment was a cause of [his] pain." Id. Diaz contends that it was wrong to conclude given this evidence, which must be viewed in the light most favorable to Diaz, that he cannot "show that which is not provable—how much of [] Diaz's pain was caused by the delay of his [HCV] treatment." Id. Diaz argues that he was suffering from pain during the period he was under Avent's care. Id. at 9. He argues that the Magistrate Judge was wrong to conclude that there was no causal link between the delayed care and his pain because he did not prove that the delayed care was the sole cause of his pain, but he argues, a jury could nonetheless find that the delay was a cause of his pain. Id. Diaz argues that he need only show that the delay was a cause of his pain, not the only or most significant cause. Id. at 10-11. Accordingly, he contends, there is a genuine dispute of fact as to causation. Id. at 11.

Third, Diaz disputes the notion that he asserted a new theory of injury at oral argument. Id. at 12. Rather, he contends that his argument about Avent's prescription of contraindicated pain medications was a response to Avent's argument that Diaz caused his own pain by his refusal to take the prescribed medication. Id. at 12. He argues that he was not arguing "affirmatively that he was injured because he was prescribed pain medication, but rather that [] Avent cannot prevail on his mitigation defense because it was not reasonable for [] Diaz to be forced to take medi[c]ations that could cause him more harm." Id. at 12-13.

Fourth, Diaz argues that Avent waived Diaz's emotional distress argument by failing to respond to it in his MSJ Reply or at oral argument. Id. at 14. Diaz contends that "[b]ecause [] Avent did not contest or show that [] Diaz did not suffer emotional distress, there remains a genuine issue of material fact that must go to the jury." Id.

In reply, Avent argues first that the absence of a second liver biopsy does not relieve Diaz of his burden of proof on all elements of his deliberate indifference claim, including injury and causation. Reply at 1. Avent argues that Diaz has admitted that he has no evidence that his liver was damaged due to the delay in HCV treatment. Id. Avent argues that Diaz should not be able to benefit from the fact that he was unable to obtain the necessary proof, and that the case law Diaz cites to support this argument is inapposite. Id. The lack of second liver biopsy, Avent argues, did not cause any of the alleged injury to Diaz, as such a test would not have prevented the harm to his liver from occurring, rather the test would simply have proved whether harm had already occurred. Id. at 2-3. Avent also argues that Diaz has never before claimed that he requested a biopsy or that one was indicated and Avent refused to order one, nor was the failure to order a liver biopsy a deviation from the standard of care. Id. at 4. Avent contends that Diaz was not prevented from obtaining this evidence because after April 2015, and through 2022, Diaz was under the care of "multiple other providers," none of whom he claims he ever asked for a biopsy and none of whom ordered a biopsy. Id. at 7. On May 5, 2022, Diaz was released from custody, at which time, Avent argues, he could have sought diagnostic testing independently. Id.

Next, Avent argues that Diaz misinterprets the R&R's reasoning with regard to his failure to show causation as to his claims of pain. Id. at 8. According to Avent, rather than conflating causation with the amount of pain caused by delayed HCV treatment, the Magistrate Judge, "pointed out that [Diaz] had not come forward with any admissible evidence to show that a delay in treatment by [Avent] was either the specific cause or proximate cause of [his] pain and/or swelling." Id. Avent contends that Diaz's expert never opined that any of Diaz's pain was specifically a result of his HCV or of delayed treatment. Id. at 9. Avent argues that Diaz's own lay opinion that his HCV was the cause or a cause of his pain is

insufficient to create a genuine dispute of material fact. Id. Avent further argues that Diaz does not address the Magistrate Judge's finding nor Avent's argument in his Motion that expert testimony is needed to prove causation. Id. at 9-10. Indeed, Avent argues, "[n]o medical expert has ever stated that [Diaz]'s pains were, with a reasonable degree of medical certainty, caused by [Diaz]'s [HCV] or by a delay in treatment of that [HCV]." Id. at 10.

Avent argues that whether or not Diaz suffered injury from a delay in treatment because he could not take the prescribed medications is not at issue here. Id. at 10-11. Instead, Avent contends, "[w]hat is at issue is that [Diaz] cannot claim that the injury he suffered as a result of the delay in treatment was pain and swelling when he refused medications that could have possibly alleviated those very symptoms." Id. at 11. Avent argues that accordingly, he is entitled to summary judgment on the basis that there is no genuine dispute of fact that Diaz refused medications that could have relieved his pain and swelling. Id. Avent argues that the record does not reflect that the prescribed medications can cause further liver damage as Diaz contends, rather Diaz never addressed this issue before. Id. at 11-12.

Finally, Avent argues that Diaz is not entitled to emotional distress damages because his claims are based on allegations of swelling and pain in his legs, but Avent's motion for summary judgment includes his argument that the evidentiary record does not support Diaz's claims that this pain and swelling was caused by Avent's delay in treatment. Id. at 12. Because the R&R finds that Diaz has insufficient evidence on causation, and concludes that Avent is entitled to summary judgment, Avent argues that Diaz "cannot prevail on the dependent emotional distress damages either." Id. Avent also contends that his motion for summary judgment did address emotional distress and Diaz is incorrect to argue otherwise. Id. at 12-13.

   The Court has considered each of Diaz's four objections and finds that each is unsupported by the record and the underlying case law. First, the Court agrees with the Magistrate Judge and with Avent's reasoning as to the failure of proof. As Avent argues, Diaz does not contend that the failure to perform the biopsy resulted in harm to his liver. Instead, he argues that the lack of biopsy prevented him from demonstrating that harm occurred. Objections at 6-7. There is seemingly no evidence to show that failure to perform the biopsy resulted in further liver damage or damage that could only have been treated once discovered through a biopsy. In April 2015, Avent ultimately authorized Diaz for antiviral treatment despite not conducting an additional biopsy, demonstrating that a biopsy was not necessary for a decision on continued treatment. R&R at 5. The cases cited by Diaz are distinguishable, first because they address the standard of care in medical malpractice cases. See Gardner v. Pawliw, 150 N.J. 359, 379-80 (1997); Reynolds v. Gonzalez, 172 N.J. 266, 290 (2002). Even if relevant, they are distinguishable because in each case, the court found that the jury would have to determine that the failure to perform testing was a substantial cause of damage that would have been remediable. Gardner, 150 N.J. at 389; Reynolds, 172 N.J. at 290. The failure to perform the biopsy in this case has neither been shown nor argued to be a cause of any additional liver damage, nor does the Court find any authority for the proposition that Avent was obligated to provide the biopsy so that Diaz would be able to prove damage had previously occurred.

   Additionally, Diaz had the opportunity, once under the care of other medical professionals, to seek a liver biopsy, which the record reflects he did not do. Reply at 7. The Court concludes that the argument that Avent prevented Diaz from "presenting the best evidence of the damage to his liver" is undermined by the fact that Diaz could have obtained such evidence by seeking a biopsy once he was no

longer under Avent's care. Objections at 6. Therefore, the Court finds that this objection lacks merit.

Second, Diaz objects that "Avent failed to establish that there was no genuine dispute of material fact regarding the delay in treatment being a cause of [] Diaz's pain and other symptoms." Objections at 5. The Court agrees that Diaz's lay opinion that his HCV was the cause of his pain and other symptoms is insufficient to create a dispute of material fact on the issue of causation. The Court is persuaded by the Magistrate Judge's conclusion, backed by ample supporting case law, that "in a case like this—involving a chronic disease with a complex diagnostic picture—expert medical opinion testimony is so vital, if not indispensable to push the case to trial." R&R at 16. As the R&R indicates, Dr. Solny did not reach a conclusion about specific causation, and "[t]hus, even with Dr. Solny's testimony, plaintiff has not met his burden to provide more than speculation of specific causation." Id. Without expert testimony on the cause of his pain, the Court agrees Diaz is unable to carry his burden of proof.

Third, Diaz objects to the R&R's characterization of his argument about prescribed pain medication as novel because he contends that it was made in reply to Avent's argument that Diaz "caused his own pain by refusing to take the pain medications prescribed to him." Objections at 12. The Court concludes, as the Magistrate Judge did, that this argument was waived because Diaz raised it for the first time at the hearing on Avent's Motion. R&R at 15, n.7. Even if the argument were not waived, it is no answer that Diaz refused to take the prescribed medications because of his concerns of liver damage because he does not offer any evidence that shows that taking the medications as prescribed would have exacerbated any liver problem. See Objections at 13 (citing dkt. 193-1 ¶¶ 63, 73, 132).

Fourth, Diaz argues that Avent waived his emotional distress argument and thus the issue of whether Diaz suffered emotional distress as a result of Avent's delayed treatment of his HCV must go to a jury. Objections at 14. The Court agrees with Avent's argument in reply that Diaz's emotional distress damages are contingent upon his proof of causation. Diaz argues that the pain and swelling he experienced caused him to "miss meals, be sleep deprived, and struggle to walk," and that he ultimately felt "depressed and defeated." Id. In order to succeed on his argument, Diaz would have to show that Avent's treatment delay was responsible for the underlying pain and swelling in his legs. This is one of the two elements on which the R&R found Diaz was unable to carry his burden of proof, a conclusion with which this Court agrees. Accordingly, Diaz is not able to state a dependent emotional distress claim on this basis.

## V.   CONCLUSION

Having completed its review, the Court accepts the findings and recommendations set forth in the R&R. Accordingly, IT IS ORDERED that Avent's motion for summary judgment is **GRANTED**.

Dated: January 3, 2025

CHRISTINA A. SNYDER
United States District Judge